17039

GEORGE HERMAN BUTLER, Adm'r, Respondent, v. PATTERSON
TEMPLES, Appellant

(88 S. E. (2d) 586)

*Messrs. B. E. Nicholson,* of Edgefield, and *Butler B.
Hare,* of Saluda, *for Appellant,*

*Messrs. Griffith, Coleman & Griffith,* of Saluda, *for Respondent,*

July 25, 1955.

STUKES, Justice.

The appellant sent his eighteen-year-old son, Grady, in his (appellant's) automobile to the home of respondent on a Sunday afternoon to borrow some clothing from the wife of the latter for the use of appellant's wife who was about to enter a hospital. Grady drove the car into the front yard of the home, parked it facing the steps, at a slight angle, and the front of the car was about two feet from the steps. Respondent, his wife and their two small children, aged four and two years, were in the yard. Grady told them his mission and Mrs. Butler went into the house to look for

the articles of clothing and was followed by Grady and her older child, leaving respondent, the father, with the two-year-old Betty Jo in the yard. When the others did not immediately return the respondent went into the house, leaving the little girl in the yard unattended.

Grady left the house with the clothing ahead of the others, got in the automobile and started and reversed it. Then he heard the warning shouts of a neighbor who was sitting on his porch across the road, about 150 feet away, and stopped the automobile, but not until it had been backed two or three feet and over the body of Betty Jo, inflicting injuries from which she died within a few hours.

The action was brought under Lord Campbell's Act for the benefit of respondent and his wife, who are the surviving parents of the deceased. Code of 1952, Sections 10-1951, 1952. The specifications of alleged negligence were: backing the automobile without observing the child at the rear of it; in failing to keep a proper lookout when the driver knew, or should have known, that the child was in the yard where he backed the automobile; in doing so before determining her whereabouts; in failing to give any warning signal before backing; and without first determining that the way was clear when he knew, or should have known, that the child was playing in the yard where the automobile was parked. The answer pleaded a general denial and the contributory negligence of respondent and his wife, the parents of the deceased, in leaving their child in the yard unattended in a place of known danger with the knowledge that Grady was on an emergency errand and would immediately drive the car out of the yard; and as to respondent individually, that he left the child unattended with the knowledge that Grady would soon back his car from the yard. The answer also pleaded accident.

The testimony of respondent's witnesses, including the neighbor who saw the tragedy from his nearby porch, established the facts which have been stated, and that the de-

ceased child was playing in the sand about two feet behind the right rear wheel of the automobile, out of Grady's view as he entered it on the left and he started it without any signal and without any effort to discover the presence of the child, which he could have done by going to the rear of the automobile.

Grady's testimony for the defendant was quite susceptible of reasonable inference of his negligence. While he was in the house to get the clothing he saw the parents and the older child from which he should have known that Betty Jo had been left in the yard where he admittedly had observed her when he entered the house. He said that when he came out, quoting from his testimony, "Well, I looked sort of out into the yard, going towards the car. I didn't see anyone. I got in the car and cranked it up and eased back and looked, but I didn't see anything. I don't know when I looked back, whether it was before I started off or not, but I looked back." He said that as he started back he heard the neighbor's warning call, stopped after going two or three feet, and "pulled back up"; and at that time respondent was still in the house. On cross examination he admitted that he saw the entire family in the yard when he arrived; in the house he saw only the three members other than Betty Jo, whom he had last seen in the yard about ten feet from his automobile, and did not see her when he came out. Leaving the house, he stepped off the porch, caught hold of the door of the car and got in; he said that he could not have seen the child unless he had walked around the car. Of course he could, had he gone to the rear of it.

The trial resulted in verdict of $7,500.00 for respondent. Timely motions of appellant for nonsuit, directed verdict and judgment *non obstante veredicto* were overruled and this appeal followed. There is no contention of error in the admission of evidence or in the instructions to the jury. The exceptions raise, and appellant has argued, two questions: First, that the testimony was insufficient to submit the issue of negligence on the part of the driver of the au-

tomobile; and, second, that it established contributory negligence, as a matter of law, on the part of the parents of the deceased, for whose benefit the action was brought.

Appellant cites for his contention that the driver's conduct is not reasonably susceptible of inference of negligence, the following decisions: *White v. Edwards Chevrolet Co., Inc.,* 186 Va. 669, 43 S. E. (2d) 870; *Pritchard v. Henry,* Tex. Civ. App., 200 S. W. (2d) 651; *Comer v. Travelers Ins. Co.,* 213 La. 176, 34 So. (2d) 511; *Hahn v. Anderson,* 123 Pa. Super. 442, 187 A. 450; *Larson v. Loucks,* 69 S. D. 60, 6 N. W. (2d) 436, and *Williams v. Cohn,* 201 Iowa 1121, 206 N. W. 823. To the contrary respondent cites: *Eaton v. S. S. Pierce Co.,* 288 Mass. 323, 192 N. E. 831; *Gorzeman v. Artz,* 13 Cal. App. (2d) 660, 57 P. (2d) 550; *Frasciello v. Baer,* 304 Mass. 643, 24 N. E. (2d) 653; *Callahan v. Disorda,* 111 Vt. 331, 16 A. (2d) 179; *Derry v. Grimes,* 202 Ark. 20, 148 S. W. (2d) 676; *King v. Cipriani,* Ohio App., 32 N. E. (2d) 446; *Dungan v. Brandenberg,* 72 Ariz. 47, 230 P. (2d) 518; *Lovel v. Squirt Bottling Co. of Waconia,* 234 Minn. 333, 48 N. W. (2d) 525, and *Miami Paper Co. v. Johnston,* Fla., 58 So. (2d) 869.

The foregoing decisions of varying results are reconciliable in large measure upon the concept that the jury may reasonably find negligence where the driver knew, or in the exercise of due care should have known, of the presence of the child in a place of danger about the automobile.

The following is from 44 A. L. R. 434:

"The tendency of the later cases would seem to indicate that the courts are requiring a higher degree of care on the part of the operators of automobiles towards children playing on or in proximity to their automobiles than was announced in the original annotation, particularly in those cases in which the driver had notice of the children's presence on or about the machine."

It is generally held that one must be on the alert for unpredictable acts of children. 5 Am. Jur., Automobiles, Secs. 185, 186, 198, 199. Blashfield's Cy-

clopedia of Automobile Law and Practice, Sec. 1496. Annotation, 30 A. L. R. (2d) 5. In the last-cited it is said at page 12:

"The circumstances are important in this connection; and one of the circumstances being the fact that the driver knows or should know that children, whose characteristics are well known, are involved, it has been held in the great majority of cases that a great or high degree of care or caution is required of the driver."

Moreover, it is well established upon reason and authority that the backing of a motor vehicle is attendant with unusual danger to one who may be in its path and requires commensurate care on the part of the operator of the vehicle. 5 Am. Jur., Automobiles, Secs. 328 *et seq.* Annotations, 67 A. L. R. 647 and 118 A. L. R. 242. Blashfield, Secs. 1101, 1102. *Carroll v. Lumpkin,* 146 S. C. 178, 143 S. E. 648. *Benedict v. Marks Shows,* 178 S. C. 169, 182 S. E. 299. Decisions are collected in 30 A. L. R. (2d) 102 under the heading "Children near driver's parked vehicle; duty upon starting," which are illustrative of application of both of the above rules, and they are similarly applicable to the instant facts.

As indicated in the above recital of the evidence, the jury were fully warranted in finding negligence on the part of the driver of the car here, which answers appellant's first answer adversely to him.

Turning to the second question, appellant relies upon alleged contributory negligence of the parents, the beneficiaries of the recovery, which would have been a defense, if established,. as shown by the following decisions which he cited: *Sandel v. State,* 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268; *Wilson v. Clarendon County,* 139 S. C. 333, 138 S. E. 33;· *Cirosky v. Smathers,* 128 S. C. 358, 122 S. E. 864; *Crawford v. Simmons-Mayrant Co.,* 141 S. C. 333, 139 S. E. 788, and *Horne v. Atlantic Coast Line,* 177 S. C. 461, 181 S. E. 642. The issue of contributory

negligence of the parents was submitted to the jury in the trial of the case and their verdict negatives the existence of it. The contention therefore is that the court should have found contributory negligence of the parents as a matter of law. The child was, of course, of such age as to be incapable of negligence.

In overruling appellant's motions after verdict, the trial judge held that if it were conceded that there was evidence of negligence of the parents, it was for the jury to say whether such, if any, contributed as a proximate cause to the injury or whether it was a mere condition and remote in the chain of causation, for which he cited *Bodie v. Charleston & W. C. Ry. Co.*, 61 S. C. 468, 39 S. E. 715; *Key v. Charleston & W. C. R. Co.*, 144 S. C. 164, 142 S. E. 336; *Leppard v. Southern R. Co.*, 174 S. C. 237, 177 S. E. 129; *Seay v. Southern Railway—Carolina Division*, 205 S. C. 162, 31 S. E. (2d) 133; *Truett v. Atlantic Coast Line R. Co.*, 206 S. C. 144, 33 S. E. (2d) 396, and *Nettles v. Southern Ry. Co.*, 211 S. C. 187, 44 S. E. (2d) 321.

We do not think that it is necessary to determine the present applicability of the cited decisions because we do not think that it may be fairly concluded, under the evidence in this case, that the parents were guilty of contributory negligence as a matter of law in leaving their child unattended for a few minutes in the yard of their home. They knew that Grady was cognizant of the child's presence in the yard, or in the exercise of due care should have been so. "Contributory negligence is an affirmative defense and the defendant who pleads it has the burden of establishing it by the preponderance of the evidence. It rarely becomes a question of law for the court." *Gillespie v. Ford*, 225 S. C. 104, 81 S. E. (2d) 44, 47, and earlier cases there cited.

It would be unreasonable to hold that parents are guilty of negligence, as a matter of law, in permitting their child to play unattended in their own yard,

certainly in the absence of unusual danger, as the authorities, which will be cited, show. Whether the parents were guilty of contributory negligence in this case was, at most, an issue for the jury; it was submitted to them and by their verdict they found no negligence on the part of the parents. Decisions of other courts may be found in the annotations to which we have referred in the discussion of the first question, in which verdicts were upheld for injuries to children while alone at play in the yards of their parents' homes. In our case of *Hopkins v. Derst Baking Co.*, 221 S. C. 497, 71 S. E. (2d) 407, the jury found a special verdict that the mother of the child victim there was not barred of recovery by contributory negligence on her part, although the child was out of the yard and in the street.

"Parents are presumed to do their duty, and the mere fact that a child of tender years is momentarily found alone in a public street does not, as a matter of law, show negligence of the parent with respect to the child. * * * The mere fact that a child of tender years was struck by an automobile while unattended by an adult does not necessarily show negligence on the part of the parent. *Thus negligence cannot be imputed to the parents or custodian of a child playing in her own yard when struck by a backing truck.*" Blashfield, Sec. 1552: (Italics added.)

An uncle backed his car over a sixteen months old nephew at play in the drive of their joint home in *Jackson v. State Farm Mut. Auto Ins. Co.*, La. App. 1947, 32 So. (2d) 52. Verdict was upheld and the parents of the child were absolved from the charge of contributory negligence. The court distinguished the case from *Comer v. Travelers Ins. Co.*, La. App., 27 So. (2d) 438, which was affirmed in 213 La. 176, 34 So. (2d) 511, *supra*, cited by the instant appellant. There was similar affirmance of verdict in *Cleveland v. Grays Harbor Dairy Products*, 1938, 193 Wash. 122, 74 P. (2d) 909, where a truck driver backed over a three year old child, on defendant's premises, whom the driver had previously seen in the vicinity of the truck.

In *Eaton v. S. S. Pierce Co., supra,* 1934, 288 Mass. 323, 192 N. E. 831, 832, opinion by Chief Justice Rugg, a three years, nine months old child was playing in the front yard of parents' home. The driver of a delivery truck saw her when he drove into the driveway. After making delivery he put empty box in the back of the truck and the child was not in the driveway. He got in the truck and began to back without giving any signal and struck the child within ten feet. Verdict for plaintiff was sustained and the court said: "Manifestly the child was rightfully playing in her own yard. No negligence can be attributed to either her or her custodian. * * * 'The backing of any vehicle entails more or less limitation on the view by the driver of the area to be traversed and thus requires corresponding vigilance on his part to avoid causing injury to persons who are known to be, or likely to be, there, whether the vehicle is being backed on a public street or on private land.' "

*Embry v. Reserve Natural Gas Co.,* 1929, 12 La. App. 97, 124 So. 572, 576, also involved the death of a child three years and nine months old, who was killed when a truck was backed over him in a street, without signals, in the block adjacent to parents' home. Recovery of $7,500.00 in behalf of the parents was upheld. We quote from the opinion: "Neither do we think plaintiffs were negligent in permitting the child to play, unattended, in a public street. It was said in *Westerfield v. Lewis,* 43 La. Ann. 63, 9 So. 52, that parents are not obliged to restrain their children within doors at their peril, and that the fact that a child five years old had strayed more than two blocks from home, at play with other children, is not of itself evidence of contributory negligence on the part of the parents. And in *Palermo v. Orleans Ice Mfg. Co.,* 130 La. 833, 58 So. 589, 40 L. R. A., N. S., 671, it was said that "a parent is not negligent in permitting his child, four years of age, to be on the sidewalk adjoining his residence."

In *Riotto v. German's Express,* 1938, 196 A. 677, 16 N. J. Misc. 74, a child of unstated age, inferably unattended, in yard which was common to his father and to defendant, was backed on and injured by truck without warning; judgment for plaintiff was upheld. In *Callahan v. Disorda, supra,* 1940, 111 Vt. 331, 16 A. (2d) 179, 182, a car backed over three year old child in street. Verdict for plaintiff was affirmed and it was said: "She [the driver] was charged with the common knowledge that very young children are erratic and likely to move quickly and without regard for their own safety. If one knows that a child is in the highway he is bound to a proportionate degree of watchfulness." *Robbins v. Green,* 1945, 93 N. H. 384, 42 A. (2d) 690, held that knowledge that child was about parked car required sufficient care to discover it before starting the car.

In *Gorzeman v. Artz, supra,* 1936, 13 Cal. App. (2d) 660, 57 P. (2d) 550, 551, a three year old child playing in driveway which circled his home was run over by bakery truck; driver admitted it was backed over child. Verdict was sustained and the following was quoted with approval from *Cambou v. Marty,* 98 Cal. App. 598, 277 P. 365: " 'Any reasonable man can be charged with knowledge that a child is apt to be found at any place about the family yard. Charged with that knowledge it becomes his duty to use vigilance and care before setting in motion a dangerous instrumentality in that locality. Failing in the duty he is negligent. We cannot concede that it is a harsh burden to place upon a visitor at a family home. Where a life may be jeopardized by a failure to make certain a clear path it surely is not unreasonable, as a matter of law, to insist that ordinary care demands some precaution before starting an automobile.' "

The facts in the last cited case of *Cambou v. Marty,* 277 P. 365, 366, are remarkably like the facts in the case at bar. For full appreciation of the similarity the report of the case should be read. The opinion in it might almost be

adopted here with substitution only of names. We quote from it:

"The defendant Marty [here Grady] had been a frequent visitor at the Cambou [here Temples] home. He knew the family and the individual members thereof. He knew that the baby, Jackie, [here Betty Jo] was a child of walking age. On different occasions he had seen him playing around the yard and the premises, and on some occasions had seen him playing around the place where the automobile had been left standing. * * * The fact is that defendant Marty [here Grady] forgot all about the baby. In his haste to return home he had in mind nothing but a hurried exit. * * * From all of the facts the defendant here was charged with a duty while in these premises, and that duty was to be ever watchful. * * * It would have taken but a second or two to have looked around the car. * * *

"Coming to the defense of contributory negligence little may be said. The home is a place of refuge, a sanctuary. The yard surrounding is the same. It is the human instinct to segregate from the rest of the world one little spot in which the family may be safe and secure. The chief reason for a home, with its yard, is that there may be such a place. Under all of the circumstances we cannot say, as a matter of law, that it is negligence for a mother to permit a child of the age and strength of the baby Jackie [here Betty Jo] to play around the private yard and walks of her home. The defendant Marty [here Grady] was a relative and friend, and surely his presence upon the premises did not furnish a source of danger which the mother, in the exercise of ordinary care, was charged to anticipate and guard against."

The observations in reference to the conduct of the mother of the deceased child in the foregoing case (the father was away from home) are equally applicable to both parents of Betty Jo in the case in hand.

We conclude without difficulty that in this case appellant was entitled to no more than submission of the issue of

contributory negligence of the parents to the jury, whose verdict must stand.

Judgment affirmed.

TAYLOR, OXNER and LEGGE, JJ., concur.

JOSEPH R. Moss, Acting Associate Justice, disqualified.