COMMONWEALTH *vs.* ABRAHAM EHRLICH.

Suffolk.    March 3, 1941. — March 31, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Evidence*, Of identity.  *Practice, Criminal*, Exceptions:  whether error
   harmful.  *Error*, Whether harmful.

At the trial of a complaint for promoting a lottery, evidence that materials
   used for a lottery and envelopes, bearing a name as addressee which
   was the same as that of the defendant and as that specified in the
   complaint, were found in an apartment occupied by one of that name,
   and that the defendant had voluntarily presented himself for trial
   on the complaint in the District Court, warranted inferences that it
   was he who lived in the apartment, that he was connected with the
   lottery, and that he was the person charged in the complaint.
On the issue whether the defendant lived in an apartment occupied by
   one bearing his name, the admission of evidence that a police officer
   learned from a woman of that name in the apartment that her hus-
   band was not at home was not error prejudicial to the defendant.

COMPLAINT, received and sworn to in the Municipal Court
of the Dorchester District of the City of Boston on May 20,
1940.

Upon appeal to the Superior Court, the case was tried
before *J. M. Hurley*, J., a District Court judge sitting under
statutory authority.

*H. L. Rose*, for the defendant.

*H. F. Goldman*, Assistant District Attorney, for the Com-
monwealth.

COX, J.  The defendant was tried and found guilty on a
complaint that charged him with being concerned in the
setting up, managing and drawing of a certain lottery for
money.  G. L. (Ter. Ed.) c. 271, § 7.  The exceptions are
to the denial of his motion for a directed verdict of not
guilty and to the admission of evidence.

The jury could have found that on May 18, 1940, police
officers of the city of Boston went to the premises numbered
243 Columbia Road, in the Dorchester district, and rang an

outside bell that bore the name "A. Ehrlich." There was evidence that "the Ehrlichs" lived on the second floor of the three-family house, and the door was immediately opened by "a Mrs. Ehrlich." In a closet adjoining the bathroom the officers found a carton containing eleven hundred forty-two "number pool slips," so called, tally sheets, "Treas-American Sweepstake ticket books," a number of "Auto-Check lottery tickets," "Auto-Check information slips," writing pads, carbon sheets of all sizes and printed cards upon which "the lottery customers" were notified that there were certain numbers where only half prices would be paid. There was also found in this carton a large number of envelopes bearing dates from February to April, 1940, addressed to A. Ehrlich and Abraham Ehrlich, 243 Columbia Road, Dorchester, Massachusetts. The defendant excepted to the introduction of the number pool slips and the envelopes. There was a telephone in the apartment, but no one except "Mrs. Ehrlich" was present when the police officers arrived. They remained on the premises from ten o'clock in the morning until one o'clock in the afternoon, and while they were there, an attorney arrived, and after a conversation held with him "the police left without either seeing . . . or making an arrest of the defendant"; and "from . . . [that] day to the date of the trial the police neither spoke with the defendant nor saw . . . [him], but on the date of trial at the Dorchester District Court the defendant presented himself for trial," where he was found guilty on the complaint.

Upon cross-examination one of the officers testified that he did not know that the defendant lived at the premises. Apparently on direct examination he was asked what he learned as a result of a conversation with Mrs. Ehrlich, and his answer was that he learned from her that her husband was not at home. The defendant objected to this answer, asked that it be struck out, and excepted to the refusal of the trial judge to do so.

The defendant contends that his motion for a directed verdict should have been allowed, and that there was error in the admission as evidence of the number pool slips and

envelopes, for the reason that there was no evidence to connect him with the slips and no evidence from which it could be found that he lived at the premises in question. No question is raised that the slips and other material, apart from the envelopes, are not familiar material used by one concerned in a lottery. See *Commonwealth* v. *Blood,* 11 Gray, 74, 77; *Commonwealth* v. *Tibbetts,* 157 Mass. 519; *Commonwealth* v. *Gorman,* 164 Mass. 549; *Commonwealth* v. *Coyne,* 228 Mass. 269.

A jury may find a crime proved beyond a reasonable doubt even though the inference of guilt from the facts established is not inescapable or necessary. There is a case for the jury unless the inference either is forbidden by some special rule of law or is unwarranted because too remote according to the ordinary course of events. If there is a case for the jury, they are at liberty to use their general knowledge in determining what inferences are established beyond a reasonable doubt, and the facts inferred by them are as properly proved as if directly testified to. But if, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise, or has no solid foundation in established facts, a verdict of guilty cannot stand. *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401, and cases cited.

There is no direct evidence that the defendant lived at the premises in question, but we cannot say that the jury was not warranted in inferring that he did. There is more to the evidence than the mere identity of names. See *Ayers* v. *Ratshesky,* 213 Mass. 589, 592–595; *Portland Maine Publishing Co.* v. *Eastern Tractors Co. Inc.* 289 Mass. 13, 17, 18. It could have been inferred that the defendant, without being arrested or notified to appear in court, voluntarily presented himself for trial in the Dorchester District Court on the present complaint. We do not suggest that this evidence, standing alone, would be enough to prove criminal conduct. It is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. "Evidence which would be colorless if it stood alone may get a new complexion from other facts which are

proved, and in turn may corroborate the conclusion which would be drawn from the other facts." *Commonwealth* v. *Mulrey,* 170 Mass. 103, 110, 111. *Commonwealth* v. *Coyne,* 228 Mass. 269, 272. In the circumstances, where the defendant, Abraham Ehrlich, presented himself for trial in court on a complaint in which an Abraham Ehrlich was named as defendant, it cannot be said that the jury was not warranted in inferring that this evidenced a consciousness of participation in the acts charged in the complaint. *Frasciello* v. *Baer,* 304 Mass. 643, 646. The jury must have concluded that the defendant's identity as the person named in the complaint was established, and that he was, in fact, connected with the incriminating evidence that was discovered in the apartment where "the Ehrlichs" lived, and where the envelopes addressed to A. Ehrlich and Abraham Ehrlich were found. We cannot say that these conclusions were not warranted. See *Commonwealth* v. *Borasky,* 214 Mass. 313, 318, 319; *Bishop* v. *Pastorelli,* 240 Mass. 104, 106, 107; *Commonwealth* v. *Goldberg,* 252 Mass. 76; *Commonwealth* v. *Gentile,* 255 Mass. 116; *Sutherland* v. *Feinberg,* 261 Mass. 394, 396; *Hinds* v. *Bowen,* 268 Mass. 55; *Doonan* v. *Gravina,* 291 Mass. 103. What has been said disposes of the defendant's exception to the admission of the slips and envelopes.

We' are of opinion that there was no reversible error in the refusal to strike out the answer of the police officer as to what he learned from Mrs. Ehrlich. At the argument in this court, the defendant's counsel stated that there was no contention that the defendant was at home. It is to be observed that no objection was made to the question, which obviously called for an answer based upon a conversation not competent as to the defendant. It is unnecessary to consider whether, in the circumstances, the defendant was too late in objecting to the answer after having had the benefit of it without objection to the question. See *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 99; *Crowley* v. *Swanson,* 283 Mass. 82, 85; *Solomon* v. *Dabrowski,* 295 Mass. 358. In order to find the defendant guilty, it was not necessary to show that he was the husband of Mrs.

Ehrlich, and any reference by her to her husband neither helped the Commonwealth, nor harmed the defendant. See *Commonwealth* v. *Gettigan*, 252 Mass. 450, 463.

*Exceptions overruled.*